623 F.2d 720
 80-1 USTC P 9360
 UNITED STATES of America and Francis W. Murphy, Special
Agent, Internal Revenue Service, Petitioners, Appellees,
v.
ARTHUR ANDERSEN & COMPANY, Respondent, Appellant,
and
Good Hope Industries, Inc., Intervenor, Appellee.
 No. 79-1411.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 3, 1979.
Decided March 31, 1980.
 
 Frederic W. Hickman, Chicago, Ill., with whom John L. Conlon, Michael M. Conway, Wm. Carlisle Herbert, Hopkins, Sutter, Mulroy, Davis & Cromartie, Chicago, Ill., J. Read Murphy, John T. DelNegro and Murtha, Cullina, Richter & Pinney, Hartford, Conn., were on brief, for respondent, appellant.
 Carleton D. Powell, Atty., Tax Division, Dept. of Justice, with whom M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., Edward F. Harrington, U. S. Atty., Boston, Mass., Gilbert E. Andrews and Robert E. Lindsay, Attys., Tax Division, Dept. of Justice, Washington, D. C., were on brief, for petitioners, appellees.
 Kenneth J. Bialkin, Louis A. Craco, Howard C. Buschman, III., Michael P. Zweig and Willkie, Farr & Gallagher, New York City, on brief for American Institute of Certified Public Accountants, amicus curiae.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 COFFIN, Chief Judge.
 
 
 1
 This is an appeal from an order of the United States District Court for the District of Massachusetts enforcing an Internal Revenue Service summons issued to the appellant, Arthur Andersen & Co. ("Andersen"). Andersen's appeal asserts that this summons did not meet the relevance requirement of 26 U.S.C. § 7602.[1] The IRS, in addition to arguing the propriety of the district court's order enforcing its summons, filed a motion to dismiss Andersen's appeal as moot. Because we find the question of mootness dispositive, we do not reach the merits of Andersen's appeal.
 
 
 2
 The summons at issue in this case was served upon Andersen in the course of an IRS investigation of Good Hope Industries, Inc., ("Good Hope"), for whom Andersen had acted as auditor and tax advisor for the fiscal years ending July 31, 1973 through 1976. The IRS directed Andersen to produce and to testify about various records and workpapers related to its auditing and tax planning work for Good Hope. Andersen resisted producing its audit work programs, tax planning papers, and tax accrual audit workpapers.[2] The district court, after holding an evidentiary hearing, ordered Andersen to comply with all aspects of the summons.[3] Motions for a stay of the court's enforcement order were denied first by the district court and then by this court.[4] After filing its notice of appeal from the district court's order,[5] Andersen complied with the summons by producing all the documents requested by the IRS. In this appeal, Andersen has challenged only that part of the order requiring the production of the tax accrual workpapers prepared in conjunction with its audit of Good Hope.
 
 
 3
 Since Andersen has produced all of the documents forming the subject matter of this appeal, the controversy presented to this court appears, on its face, to be moot. See United States v. Lyons, 442 F.2d 1144 (1st Cir. 1971) (dismissing as moot an appeal by a taxpayer of an order enforcing an IRS summons that had been complied with). See also Barney v. United States, 568 F.2d 116 (8th Cir. 1978); United States v. Carpenter, 425 F.2d 264 (5th Cir. 1970). Andersen seeks to avoid the preclusive effect of the mootness doctrine by invoking the "capable of repetition yet evading review" exception recognized by the Supreme Court in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). An action falls within this exception if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there (is) a reasonable expectation that the same complaining party (will) be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975).[6]
 
 
 4
 We are satisfied that this case meets the latter prong of the exception that the controversy be sufficiently likely to be repeated. In May of 1979, the Chief Counsel of the IRS stated in an address to the Federal Tax Division of the American Institute of Certified Public Accountants that the IRS would actively seek access to accountants' workpapers in connection with its investigations and that recurring litigation over summonses of the type at issue in this case was likely. Andersen is one of the nation's largest accounting firms; one or more of its clients is likely to be subjected to tax investigations in which the IRS would demand from Andersen its tax accrual workpapers for that client.[7] The likelihood of recurrence here is at least as great as in other cases in which the Supreme Court has found the "capable of repetition yet evading review" exception applicable. See, e. g., Gannett v. DePasquale, 443 U.S. 368, 377-378, 99 S.Ct. 2898, 2904-05, 61 L.Ed.2d 608 (U.S. June 26, 1979) (sufficient likelihood that newspaper will again be enjoined from publishing aspects of criminal proceeding); United States v. New York Telephone Co., 434 U.S. 159, 165, 98 S.Ct. 364, 368, 54 L.Ed.2d 376 (1977) (sufficient likelihood that telephone company will again be ordered to assist FBI in performing pen register surveillance).
 
 
 5
 The basic requirement of the exception that the question be one that will otherwise evade review presents a more difficult problem. Andersen argues that the strong policy opposing delays in the enforcement of IRS summonses makes it unlikely that a district court would set a compliance date that would allow time for a prior appeal. Cf. United States v. Salter, 432 F.2d 697, 700-01 (1st Cir. 1970) (public policy militates against permitting taxpayer to engage in discovery in proceeding for enforcement of IRS summons since delay would "jeopardize the integrity and effectiveness" of the investigation). Andersen argues further that the difficulty in meeting the "likelihood of success" and "irreparable harm" requirements for a stay pending appeal make this an equally unavailable avenue for obtaining review of an enforcement order prior to compliance. Finally, since Andersen is not likely to be a party to any judicial proceeding arising out of Good Hope's tax deficiency, it will have no future opportunity to litigate the validity of the summons.
 
 
 6
 There is, however, one remaining means for a third party to obtain appellate review of such an enforcement order: it can refuse to comply and litigate the merits of the summons as a defense to a contempt citation. In its brief opposing the government's motion to dismiss this appeal as moot, Andersen acknowledges this possibility, but argues that "a person should not be required to stand in contempt of a court order to obtain appellate review." As support for this assertion, Andersen cites the Seventh Circuit's recent decision in In re Special April 1977 Grand Jury, 581 F.2d 589 (7th Cir.), cert. denied, Scott v. United States, 439 U.S. 1046, 58 L.Ed.2d 705 (1979), which permitted a post-compliance appeal from an order enforcing grand jury subpoenas. In that case the court stated "the Supreme Court has not required litigants to subject themselves to contempt or criminal sanctions in order to meet this prong of the mootness test." Id. at 591, citing Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).
 
 
 7
 We see two difficulties with Andersen's reliance on In re Special Grand Jury. First, the case is distinguishable in one important aspect. The grand jury subpoenas at issue were directed at members of the appellant's staff, not the appellant himself. It would be unreasonable to expect individuals with no strong interest in resisting the subpoenas to expose themselves to contempt by refusing to comply. Cf. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (interlocutory appeal from discovery order permitted when order directed to person other than appellant who has insufficient incentive to risk contempt). Here, in contrast, although Andersen is not the immediate target of the IRS investigation, it has asserted strenuously that it is damaged by the disclosure of these workpapers to the IRS. According to Andersen, its ability to obtain information from its clients necessary to perform its auditing function properly will be seriously impaired. This asserted interest provides sufficient incentive for Andersen to take all available steps to avoid disclosure. See In re Oberkoetter, 612 F.2d 15 at 18 (1st Cir. Jan. 4, 1980) (attorney would have adequate incentive to risk contempt to avoid testifying against his client).
 
 
 8
 Second, the Supreme Court decisions cited by the Seventh Circuit in In re Special Grand Jury do not lead inevitably to the conclusion that a litigant need not incur a contempt citation before meeting the "evading review" test. It is true that in Nebraska Press Association the court applied the mootness exception even though the newspaper publishers who were enjoined from reporting certain facts regarding an ongoing trial could have tested the court's order by violating it and contesting the resulting contempt sanction. Similarly, in First National Bank of Boston the Court noted that the criminal penalties imposed by a Massachusetts statute prohibiting certain political expenditures by banks "discourage challenge by violation". Both of these cases, however, involved prior restraints on arguably protected speech. We believe the Court's unwillingness to require the parties in these cases to invite criminal sanctions in order to obtain appellate review more probably reflected the Court's traditionally disapproving view of prior restraints on speech than a broadly applicable statement on the scope of the "capable of repetition yet evading review" exception.
 
 
 9
 Well established doctrine regarding the appealability of interlocutory orders suggests that the burden of incurring a contempt citation is not an unreasonable one to impose on a party seeking review of a question that will otherwise become moot. In United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971), the Supreme Court stated that interlocutory review of grand jury subpoenas was available only when denial would render "any review whatsoever", including defense to contempt, impossible. See also Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); In re Oberkoetter, supra. Similarly, in the context of subpoenas issued for discovery pursuant to rule 45 of the Federal Rules of Civil Procedure, the general rule is that interlocutory review of orders with regard to such subpoenas may be obtained only as a defense to a contempt citation. See Grinnell Corp. v. Hackett, 519 F.2d 595, 596-98 (1st Cir. 1975); Ryan v. Commissioner, 517 F.2d 13, 18-20 (7th Cir. 1975); United States v. Fried, 386 F.2d 691, 694-95 (2d Cir. 1967); C. Wright & A. Miller, Federal Practice & Procedure § 2463 (1971). But see Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). In Grinnell Corp., we dismissed an interlocutory appeal, holding that a discovery order did not meet the requirements of an appealable collateral order in part because it was not a question that would otherwise evade review. In reaching this conclusion we noted that appellants could have availed themselves of the "familiar procedure" of risking a contempt citation in order to obtain appellate review. 519 F.2d at 598 (citing Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); United States v. Ryan, supra ).
 
 
 10
 In the case at bar, Andersen seeks review because it faces the prospect of repeated orders to produce its tax accrual workpapers for other clients. In addition, the American Institute of Certified Public Accountants, as amicus curiae, argues that the continued use of IRS summonses for such workpapers would have a broad detrimental impact on the accounting industry. We are aware that this case differs from the appealability cases noted above because the consequence of our denial of jurisdiction here is final foreclosure of Andersen's opportunity to appeal, rather than merely delay of an appeal until a final judgment has been obtained. But to the extent that the issue sought to be reviewed is of such assertedly vital importance to both Andersen and the industry, it does not seem too draconian to insist on resort to contempt in order to preserve the issue for appeal.
 
 
 11
 Finally, while it is tempting to base a decision to review the merits of this case on the significance of the issue presented, as Andersen urges, neither precedent nor sound judicial policy favor such a course. See Richardson v. Ramirez, 418 U.S. 24, 36, 94 S.Ct. 2655, 2662, 41 L.Ed.2d 551 (1974). Contrary to Andersen's assertion, the Supreme Court's decision in Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), is not applicable here. In Super Tire, the Court did note that the judiciary "must not close the door to the resolution of the important questions" presented in that case. Id. at 127, 94 S.Ct. at 1700. But the issue raised by appellants in Super Tire, who sought a declaratory judgment that public assistance was not available to workers engaged in an already-terminated economic strike, could not have been saved from mootness by any reasonable action on the part of the appellants. Moreover, we can conceive of no principled basis for adjudicating claims that particular issues or controversies fall within an "importance exception" to the mootness doctrine.
 
 
 12
 In conclusion, we hold that in the absence of some compelling circumstances that militate in favor of our deciding an otherwise moot case, the "capable of repetition yet evading review" exception is not available to a litigant aggrieved by a summons or subpoena who could have avoided mootness by refusing to comply. Because we find no such compelling circumstances in this case and because we conclude that Andersen had sufficient incentive to risk contempt in order to avoid compliance with this summons, the appeal is dismissed as moot.
 
 
 13
 Appeal dismissed.
 
 
 
 [1]
 Section 7602 defines the scope of the IRS's authority to obtain documents and testimony:
 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee of fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."
 The burden of proof is on the IRS to show that a summons "may be relevant" to a legitimate purpose for its investigation. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112 (1964).
 
 
 [2]
 "Tax accrual workpapers" are produced by accountants such as Andersen in conjunction with the auditing of financial statements required for companies that file financial statements with the SEC. Part of the auditing function is to evaluate the sufficiency of the client's reserves to meet its potential tax liability. This evaluation is based in part on the accountant's analysis of corporate records and in part on its assessment of opinions and projections communicated in confidence by the client. In reaching its conclusion, the accountant considers all uncertain tax positions taken by the client and determines the extent of reserves necessary to cover the liability that would result assuming that all such questions were resolved against the client
 
 
 [3]
 26 U.S.C. § 7604 provides for judicial enforcement of summonses issued pursuant to section 7602
 
 
 [4]
 Justice Brennan, acting as circuit justice, denied a petition for a stay submitted by Good Hope
 
 
 [5]
 Orders for enforcement of IRS summonses issued pursuant to 26 U.S.C. § 7604 are final orders appealable under 28 U.S.C. § 1291. Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)
 
 
 [6]
 The government, in its motion to dismiss Andersen's appeal, argues that our decision in United States v. Lyons, 442 F.2d 1144 (1st Cir. 1971), precludes Andersen from relying on the "capable of repetition yet evading review" exception. This reliance is misplaced. In Lyons, we found that there was no likelihood of future similar controversies between the taxpayer and the IRS. Moreover, we noted that if and when a proceeding was initiated against the taxpayer, he would have sufficient opportunity to contest the IRS summons at trial. Neither of these grounds for the Lyons decision is applicable in this case
 
 
 [7]
 An affidavit submitted by Andersen's in-house counsel states that since January 1, 1975, Andersen has received fifteen summonses and two subpoenas from the IRS for production of documents including tax accrual workpapers